UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11574-RGS

NICHOLI ROGATKIN, Minor By His Father and Next Friend,
VLADMIR ROGATKIN

v.

RALEIGH AMERICA/DIAMONDBACK BMX, WINDELLS SNOWBOARD
CAMP, INC., TAOW PRODUCTIONS, AND JOHN DOES 1-8

MEMORANDUM AND ORDER ON DEFENDANT WINDELL'S
SNOWBOARD CAMP, INC. MOTION TO DISMISS

September 12, 2013

STEARNS, D.J.

Nicholi Rogatkin, through his father, brought this lawsuit alleging tort and quasi-contract claims against defendants Raleigh America, Inc. (Raleigh America), Windell's Snowboard Camp (Windell's), and persons yet unnamed in Middlesex Superior Court.[1]  Windell's brought a motion to dismiss Rogatkin's claims pursuant to Mass. R. Civ. P. 12(b)(2) on the ground that the Superior Court lacked personal jurisdiction over it.  Before the motion was

---

[1] Raleigh points out that it is misnamed as Raleigh America/Diamondback BMX. The court notes also that Windell's Snowboard Camp, Inc., is missing an apostrophe.

ruled on, Raleigh America removed the case to this court. Windell's now renews its motion to dismiss.[2]

In an effort to make a prima facie showing of jurisdiction, Rogatkin alleges that defendants engaged in a number of contacts with Massachusetts: (1) at least one of the defendants invited Rogatkin to join the Diamondback BMX team and participate in a catalog shoot; (2) Rogatkin received emails from defendants assuring him of "a great career" and "contract bonuses"; (3) Windell's mailed a proposed contract to Rogatkin's home in Massachusetts and mailed three checks to this same home address; and (4) at least one of the defendants used Rogatkin's likeness in a variety of forums, including magazines and a website. In support of his allegations, Rogatkin produces only the Windell's contract and three emails from Kris Jamieson – for purposes of this motion, an agent of Windell's – to Rogatkin. Two of the emails appear to be generic messages to the Diamondback team asking members to return their contracts and explaining compensation distribution. The third email is a direct response to a complaint from Rogatkin about the contract offered him explaining that there are no additional funds available, but "[w]hen more money appears," it will be given to Rogatkin.

---

[2] Fed. R. Civ. P. 12(b)(2) is identical to the Massachusetts rule.

Rogatkin bears the burden of making a prima facie showing of personal jurisdiction. *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9, 11 (1st Cir. 1990). To do so, he must "go beyond the pleadings and make affirmative proof." *Chlebda v. H.E. Fortna & Bro., Inc.*, 609 F.2d 1022, 1024 (1st Cir. 1979). He "may not rely on unsupported allegations in [his] pleadings, but [is] obliged to adduce evidence of specific facts." *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 134 (1st Cir. 2006) (internal quotations and citations omitted). The court may then take the "*specific* facts affirmatively alleged" in the complaint as true, and "construe them in the light most congenial" to Rogatkin's claim. *Id.* (emphasis added, internal quotations and citations omitted). Put another way, "[i]n order to defeat a motion to dismiss for want of *in personam* jurisdiction, a plaintiff must do more than simply surmise the existence of a favorable factual scenario; he must verify the facts alleged through materials of evidentiary quality. Thus, allegations in a lawyer's brief . . . are insufficient, even under the relatively relaxed prima facie standard, to establish jurisdictional facts." *Brett v. Lombardi*, 239 F.3d 23, 27 (1st Cir. 2001) (citations omitted).

Rogatkin's complaint argues that personal jurisdiction exists under the state long-arm statute, Mass Gen. Laws ch. 223A, §§ 2 and 3. Because the Supreme Judicial Court of Massachusetts has interpreted the statute to be

coextensive with the outer limits of the Due Process Clause of the Fourteenth Amendment, I proceed directly to the constitutional analysis. *See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002). It is clear that Rogatkin does not allege anything approaching the "continuous and systematic contacts" with Massachusetts that would be required to establish general jurisdiction over Windell's. *See Harlow v. Children's Hosp.*, 432 F.3d 50, 57 (1st Cir. 2005). To support a more narrow finding of specific jurisdiction, Rogatkin must demonstrate that: (1) the litigation directly relates to or arises out of Windell's contacts with Massachusetts; (2) those contacts constitute purposeful availment of the laws of Massachusetts; and (3) the exercise of jurisdiction over Windell's would be reasonable. *See Phillips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999). "Questions of specific jurisdiction are always tied to the particular claims asserted." *Id.* at 289. "In contract cases, a court . . . must look to elements of the cause of action and ask whether the defendant's contacts with the forum were instrumental either in the formation of the contract or in its breach." *Id.* In a tort case, "a court charged with determining the existence *vel non* of personal jurisdiction must probe the causal nexus between the defendant's contacts and the plaintiff's cause of action." *Id.*

Turning first to Rogatkin's claims for defamation and unauthorized use of his image, he alleges no facts that would create personal jurisdiction in Massachusetts. To satisfy the first prong of "relatedness," Rogatkin must establish that his injury would not have occurred but for Windell's contact with Massachusetts, and that this contact created his cause of action. *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 35 (1st Cir. 1998). Rogatkin does not specify which of the defendants used his name or image without permission, nor where such misappropriation occurred. The only "specific" fact provided is that Raleigh America – not Windell's – misrepresented Rogatkin's age on its website.

It is not enough for Rogatkin to summarily state that his image was used in Massachusetts or that his reputation within the "BMX community" was damaged. *See Brett*, 239 F.3d at 27. There are no supported facts in the complaint that relate these claims to Massachusetts in any meaningful way, much less anything that would suggest purposeful availment by Windell's. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 624 (1st Cir. 2001) (purposeful availment prong "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receievs, to be subject to the court's jurisdiction based on these contacts."); *Johnson v. Arden*, 614 F.3d 785, 796 (8th Cir.

2010) (The 'effects' test set for personal jurisdiction over intentional torts set forth in *Calder v. Jones*, 465 U.S. 783 (1984), provides that "a defendant's tortious acts can serve as a source of personal jurisdiction only where the plaintiff makes a prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered – and which the defendant knew was likely to be suffered – [in the forum state].").

The remainder of Rogatkin's claims are premised on promises, (mis)representations, and general claims of unfair dealing by defendants. The only jurisdictional evidence that Rogatkin has put forward is three emails sent to him by Kris Jameson. Two of the emails are addressed to the entire team and do not make promises of any kind (in fact, one email acknowledges that dire financial straits of the sender). The single email sent to Rogatkin merely states that "[t]imes are very tight" and, if more money appears, some will be directed to him. These emails do not support Rogatkin's allegations of sweeping promises of a "golden life," nor anything that could be considered a misrepresentation of material facts. Again, Rogatkin cannot create personal jurisdiction solely by unsupported allegations in his complaint. *See Platten*, 437 F.3d at 137-138 (1st Cir. 2006) (Plaintiffs could not show that misrepresentation claims arose out of contact with Massachusetts because they

"failed to provide any details in their complaint or affidavits about the circumstances surrounding the parties' entry into the Agreement, including any misrepresentations that were made at that time, who may have made them, and in what capacity.").

Finally, to the extent that Rogatkin relies on the Windell's contract sent to him in Massachusetts, this is insufficient, without more, to create personal jurisdiction. *See id.* at 136 (Plaintiffs could not make out a prima facie case for specific jurisdiction under a contract theory by relying on the contract alone where their affidvaits were "silent as to details regarding where negotiations took place, where the agreement was presented for signatures, where it was signed, where it was to be performed, and who represented the Partnership at the time of the negotiations.")

ORDER

The complaint against Windell's is dismissed without prejudice for want for personal jurisdiction.

SO ORDERED.

/s/ Richard G. Stearns

_____
UNITED STATES DISTRICT JUDGE